UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE GOEBELBECKER, | ) | Case No.: 1:06 CV 576 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| PLASTIPAK PACKAGING, INC., | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

On February 16, 2006, Plaintiff Stephanie Goebelbecker ("Plaintiff" or "Goebelbecker") filed suit against her former employer, Defendant Plastipak Packaging, Inc. ("Defendant" or "Plastipak"), in the Medina County Court of Common Pleas, alleging: (1) sex discrimination based on failure to promote and eventual termination, pursuant to O.R.C. §§ 4112.02(A) and 4112.99; (2) retaliatory termination, pursuant to O.R.C. §§ 4112.02 and 4112.99; (3) sex discrimination and retaliation in violation of Ohio and United States public policy, and wrongful discharge in violation of Ohio public policy; and (4) intentional and/or reckless infliction of emotional distress. (Pl.'s Compl., ECF No. 1-2.) On March 13, 2006, Defendant removed the case to federal court on the basis of diversity jurisdiction. (ECF No. 1.)

Currently pending before the court are Defendant's Motion for Summary Judgment (ECF No. 23) and Plaintiff's Motion to Strike Reply Brief of Defendant (ECF No. 27). For the reasons

set forth below, Plaintiff's Motion to Strike Reply Brief of Defendant is denied and Defendant's Motion for Summary Judgment is granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

### A. Plaintiff's Applications for Promotion

On or about March 2, 2002, Plaintiff, an African American female, was hired by Defendant as a temporary line technician. (Pl.'s Aff. ¶ 3, ECF No. 25-2.) Plaintiff maintains that she "repeatedly filled out house applications for the position of process technician at the instruction of the Director of Human Resources and others[,] but always failed to obtain the promotion as individuals were hired for the position from outside the company [and] [t]hat these outside hires for the position of process technician were invariably male." (Pl.'s Aff. ¶¶ 5-6.) Plaintiff contends that of the approximately thirty process technicians working for Defendant at the relevant time only one was a woman. (Pl.'s Aff. ¶ 17.) However, Defendant asserts that there are seven females who "have all been or presently are now process technicians."[1] (Mamick Aff. ¶ 4.)

Plaintiff's Answers to Defendant's Interrogatories state that Plaintiff recalls applying for a promotion first in late 2002, and an additional four or five times in 2003 and 2004. (Pl.'s Answers to Def.'s First Set of Interrs. ("Pl.'s Answers"), Interrog. No. 3, Def.'s Ex. A, ECF No. 23-2.) In answer to Defendant's interrogatory regarding who received promotions over her, Plaintiff states the following:

> **Interrogatory No. 4:** State the names of all individuals who were promoted over plaintiff as is alleged in paragraph 4 of plaintiff's

---

[1] Mamick states that "she became Human Resources Manager March 7, 2005," which is after the disputed events (Mamick Aff. ¶ 6), and that the information presented in her affidavit is garnered from company records regarding current and past workers (*id.* ¶¶ 3, 8).

>> complaint.
>
> ANSWER:
> Crystal Heffelman; Heather (LNU); Steve (LNU); Jerry (LNU).
> Will supplement with additional names as they become known to
> Plaintiff during ongoing discovery.

(Pl.'s Answers, Interrog. No. 4.) Plaintiff states that when she inquired as to why she was not being promoted, "I was advised by my supervisor, Michael Galvin ["Galvin"], that I would never obtain the position of process technician because I was a woman." (Pl.'s Aff. ¶ 7.) Plaintiff does not provide a date or time period at which this comment was made.

Mamick states that the Human Resources records indicate that Plaintiff applied for the process technician position on April 28, 2004, and that she received a score of 48 percent on the related mechanical aptitude test. (Mamick Aff. ¶ 8.) Mamick states that Plaintiff's low score combined with her lack of experience in the department for which she was applying were the reasons she was not selected for that position. (*Id.*) Defendant does not address Plaintiff's claim that she applied for promotions on several other occasions. Furthermore, Defendant contends that Galvin never held a supervisory role over Plaintiff. (*Id.* ¶ 7.)

### B. Plaintiff's Complaints to the Auditor

Plaintiff asserts that, in 2003, she was sexually harassed by a co-worker who grabbed her in a sexual manner. In her Answers to Defendant's Interrogatories, Plaintiff states that she made separate complaints regarding the incident to three individuals, Chris Bradley ("Bradley"), Patty Heffelman, and Marty Stapleton, and that other unnamed individuals witnessed her complaint to Bradley. (Pl.'s Answers, Interr. No. 7.) Defendant contends that it has no record of a sexual harassment complaint by Plaintiff, and that due to the vague nature of Plaintiff's claim, Defendant cannot establish whether Plaintiff followed company policy regarding how to report such incidents.

(Mamick Aff. ¶ 9; *see* Sexual Harassment and Other Unlawful Discrimination, Ex. D to Mamick Aff., ECF No. 26-3, at 14-16.) Plaintiff maintains that the accused individual was never disciplined.

In August, 2004, Plaintiff spoke to an unidentified male independent auditor regarding her difficulty in being promoted, Galvin's comment, and the sexual harassment. Shortly thereafter, Plaintiff was asked to attend a meeting with Michelle Marlino ("Marlino"), Director of Human Resources, and Chris Evans ("Evans"), Plant Manager, to discuss these three issues.

### C. Plaintiff's Absences

Plaintiff signed an Attendance and Tardiness Policy Acknowledgment shortly after beginning her employment with Defendant, which stated that she had "been notified both verbally and in writing of the attendance and tardiness policies for all associates, as outlined in the Associate Handbook." (Def.'s Ex. L., ECF No. 23-2.) The Acknowledgment states that three or more absences within three months constitute "excessive absenteeism," which warrants a written warning. (*Id.*) Pursuant to the Associate Handbook, "[f]ailure to be at work station, ready to begin work at starting times" subjects an employee to a three-stage disciplinary process: a First Notice warrants a "Written Interview"; a Second Notice also warrants a "Written Interview (Final Warning)", and then a Third Notice makes the employee "Subject to Discharge." (Ex. B. to Aff. of Amanda Mamick ("Mamick Aff.") ¶ 16, ECF No. 26-3.) Amanda Mamick ("Mamick"), the Human Resources Manager states that "once an employee reaches the status of 'final warning' . . . the employee may be terminated for attendance issues or performance issues." (Mamick Aff. ¶ 5.)

Defendant has submitted documentation of written warnings and performance reviews citing Plaintiff's need to work on her attendance dated November 15, 2002; April 30, 2003; October 13, 2003; December 18, 2003; December 28, 2003; March 1, 2004; July 21, 2004; and September 28,

2004. (Def.'s Mot. Summ. J., Exs. B-K, ECF No. 23-2.) Each warning notes three or more absences and is signed by Plaintiff.

On September 21, 2004, Plaintiff was issued a "Final Warning" due to tardiness on July 15, 19, and 30, 2004 and absences on September 7, 14, 15, and 16, 2004. (Def.'s Ex. A, ECF No. 23-2.) In response to Defendant's interrogatory, Plaintiff concedes that she was placed on final warning for her absences and that she was absent on the four above-mentioned dates. (Pl.'s Answers, Admis. Nos. 5-9.) In her affidavit, however, Plaintiff contends that she had never been formally warned or reprimanded regarding her attendance prior to her meeting with Marlino and Evans in late August, 2004. (Pl.'s Aff. ¶ 11.) She also states that she "had been informed that [her] absences were either excused or not being counted against [her] due to having valid excuses." (*Id.*) The court must disregard Plaintiff's statement in her affidavit as it is inconsistent with her previous admission.

### D. Plaintiff's Termination

On or about February 23, 2005, the same unidentified auditor returned to review Defendant's business. (Pl.'s Aff. ¶ 13.) Plaintiff again spoke to the auditor regarding her lack of promotions and agreed to meet with the auditor again the next day. (*Id.*) On February 24, 2005, Plaintiff was terminated from her position as line technician. (*Id.* ¶¶14-16; Mamick Aff. ¶ 5.) Defendant states that Plaintiff was terminated because of an error that she made while labeling boxes the previous day, after she had been issued a "Final Warning," which made her subject to discharge for any further performance or attendance problems. (Mamick Aff. ¶ 5; *see* Pl.'s Aff. ¶¶ 14-16.) Plaintiff admits that she "incorrectly tagged an entire shift of Enforcer 64 ounce units without catching the error." (Pl.'s Answers, Admiss. No. 3.) Plaintiff states that she had never made this type of mistake before and alleges that other unnamed male employees had made similar errors but were not terminated.

(Pl.'s Aff. ¶¶ 15-16.)

### E. Pending Motions

On November 15, 2006, Defendant filed the pending Motion for Summary Judgment. (ECF No. 23.) Defendant indicates that it is moving for summary judgment in its favor on all pending claims, but only makes arguments regarding Plaintiff's ability to present a prima facie case of sex discrimination. (Def.'s Mot. Summ. J. at 4.) Plaintiff's Opposition Brief (ECF No. 25) was filed on December 15, 2006, and Defendant's Reply (ECF No. 26) was filed on January 2, 2007. Plaintiff then filed a Motion to Strike Reply Brief of Defendant on January 5, 2007, claiming that Defendant's Reply was untimely and that it contained affidavits that presented new evidence. (ECF No. 27.)

### II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil,* 188 F.3d 365, 369 (6th Cir. 1999).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

### III. LAW AND ANALYSIS

### A. Motion to Strike Reply Brief

Plaintiff first seeks to strike Defendant's Reply Brief on the ground that it is untimely. (ECF No. 27.) Plaintiff correctly states that a Reply Brief must be filed within ten days of the opposing party's filing, pursuant to Local Rule 7.1(e). However, Plaintiff fails to note that the rule also states

that this calculation "exclud[es] Saturdays, Sundays, and legal holidays." Local Rule 7.1(e). Defendant's submission on January 2, 2007, was within ten days of Plaintiff's filing on December 15, 2006, when weekends and holidays are excluded from the calculation. Defendant's Reply Brief is therefore timely.

Plaintiff also argues that Defendant's Reply Brief should be stricken because it introduces new matter by way of affidavit. Plaintiff asserts that because Defendant filed affidavits with its Reply Brief rather than with its original Motion, she had "no opportunity to argue in opposition to the held back affidavits." (Pl.'s Mot. to Strike at 2.) Defendant does not dispute that it originally sought to support its Motion through Plaintiff's Admissions and Answers to Defendant's Interrogatories, and that it submitted affidavits from Mamick and Bradley with its Reply Brief. However, Defendant maintains, and the court agrees, that these affidavits do not present evidence regarding a new matter. They simply respond to statements made in Plaintiff's affidavit and Opposition Brief. For example, Defendant rebutted the following assertions: the number of female process technicians, whether Galvin served as her supervisor, and the circumstances surrounding Plaintiff's sexual harassment complaint.

The Sixth Circuit has held that "[i]t is only logical that the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief *new reasons and evidence in support* of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond." *Seay v. TVA*, 339 F.3d 454, 482 (6th Cir. 2003) (emphasis added) (citing *Beaird v. Seagate Tech.*, 145 F.3d 1159, 1164-65 (10th Cir. 1998)). Here, however, Defendant has not submitted evidence regarding a new matter through the late-filed affidavits. Accordingly, the court finds no reason to strike the Reply Brief. Furthermore, in her

Motion to Strike, Plaintiff does not suggest that she has any additional information on those matters discussed in the affidavits submitted by Defendant, nor did she request leave to file a surreply. *See Seay*, 339 F.3d at 482 (allowing non-movant to respond to newly-produced evidence); *Brantley v. Cinergy Corp.*, No. C101378, 2006 U.S. Dist. LEXIS 8377 (S.D. Ohio Feb. 9, 2006). Therefore, Plaintiff's Motion to Strike (ECF No. 27) is denied.

### B. Sex Discrimination Claims for Failure to Promote and Termination

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1). A plaintiff may establish a prima facie case under Title VII for discrimination either by "presenting credible, direct evidence of discrimination" or by using the burden-shifting paradigm expressed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Mitchell*, 964 F.2d at 581. The analysis used for discrimination claims under Title VII also pertains to discrimination claims brought under Ohio law. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n.*, 66 Ohio St. 2d 192 (Ohio 1981); *see Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992). In this case, Plaintiff seeks to prove her discrimination claims for failure to promote and termination through both direct and indirect evidence.

#### 1. Direct Evidence

Plaintiff first contends that her Affidavit regarding Galvin's statement that Plaintiff would not receive the promotion to process technician because she is a woman constitutes direct evidence of discrimination "both as it relates to failure to promote and as it relates to termination." (Pl.'s Opp'n at 10.) Direct evidence of discrimination "is that evidence which, if believed, requires the

conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jaclyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)). When considering the relevance of direct evidence, the Sixth Circuit has held that:

> direct evidence is evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption. . . . Evidence either of statements made by non-decision makers or of statements made by decision-makers that are not related to the decisional process itself do not satisfy the plaintiff's burden of demonstrating direct evidence of discriminatory animus. . . . Instead, a plaintiff must show a direct correlation between the evidence of discrimination and the specific employment decision in question.

*Birch v. Cuyahoga County Prob. Ct.*, 392 F.3d 151, 164-65 (6th Cir. 2004) (quotation omitted).

Discriminatory remarks by a manager, even if that manager is not the ultimate decision maker, may constitute evidence of discrimination if the manager has influence over employment decisions. *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998). In *Ercegovich*, an age discrimination case, the court stated:

> In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161 (6th Cir. 1990) ("Statement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official."). This court later explained, however, that the *McDonald* rule was never intended to apply formalistically, and

-10-

> that remarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, were relevant. *See Wells*, 58 F.3d at 237-38; *see also Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 347-48 (1st Cir. 1998) (statement by head of human resources who "participated closely" in plaintiff's termination was admissible to show a discriminatory atmosphere); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1214 (3d Cir. 1995) (age-related statements of corporate vice president who may have "played a role" in the decision to terminate the plaintiff were relevant and could "properly be used to build a circumstantial case of discrimination"). Similarly, the discriminatory remarks of those who may have influenced the decision not to reassign the plaintiff to other positions in the company may be relevant when the plaintiff challenges the motive behind that decision.

*Id.* at 354-55.

In the instant case, Plaintiff contends that Galvin, whom she asserts was her supervisor, informed her that she would never obtain the position of process technician because she is a woman. In its Reply Brief, Defendant argues that Plaintiff cannot establish direct evidence of discrimination because Galvin was not Plaintiff's supervisor. (Mamick Aff. ¶ 7) ("Michael Galvin was never in a supervisory or management position over Stephanie Goebelbecker during her tenure with Plastipak.") Defendant also submits an organization chart, which purportedly demonstrates that Galvin was not in the same chain of command as Plaintiff and that he actually had no direct subordinates. (Ex. C. to Mamick Aff., ECF No. 26-3, at 13.) Mamick, the Human Resources Director, indicates that this chart depicts the organizational structure as it stood in 2002. Defendant contends that Plaintiff's position did not provide her with firsthand knowledge of the management structure and that "in plaintiff's position as a non-management employee, she would have had no access to Organizational Charts as affiant has . . . ." (Mamick Aff. ¶ 7.) In addition, Defendant submits an affidavit from Bradley, who states that he "served as a Team Leader in [Defendant

company] . . . and was the Direct Supervisor of Stephanie Goebelbecker at pertinent times through her employment with Plastipak Packaging . . . ." (Aff. Chris Bradley ("Bradley Aff.") ¶ 1, ECF No. 26-4.)

However, the court finds that Defendant's evidence does not conclusively establish that Galvin was not Plaintiff's supervisor. First, the chart bears the date "12/27/2006" (Ex. C. to Mamick Aff.), which suggests that the chart was prepared on that date, not in 2002. There is no explanation regarding who prepared the chart or what relevant knowledge the preparer of the chart possessed. Furthermore, there are also inconsistencies in the chart that cast doubt on its accuracy. For example, contrary to Bradley's contention that he was Plaintiff's direct supervisor, the chart lists Bradley as "Shift Leader 3rd Shift" and places him in a different organizational line without direct supervision over Plaintiff, who is listed as "Line Tech 1st Shift." (*Id.*) In addition, while Plaintiff identified Marlino and Evans as the head of Human Resources and the Plant Manager, respectively, during the relevant time, neither person appears anywhere on the chart. As such, the court finds that the chart does not establish who Plaintiff's supervisor was during the relevant time frame, which was from the period running from 2002 through 2004.

Even assuming that Galvin held a supervisory role over Plaintiff, however, Plaintiff has not shown any evidence that Galvin was in a position to make an employment decision regarding promotion or termination. Consequently, Plaintiff has failed to meet her burden to show a correlation between the evidence of discrimination and the specific employment decision in question. As such, Plaintiff has failed to demonstrate that a genuine issue of material fact exists as to whether unlawful discrimination was a motivating factor in Defendant's decisions regarding Plaintiff's lack of promotion and termination.

<u>2. Indirect Evidence</u>

Plaintiff next contends that she can also prove her failure to promote and termination claims through indirect evidence. *McDonnell Douglas* creates a distinct three-stage evidentiary framework for providing indirect evidence of intentional discrimination. 411 U.S. at 802. First, the plaintiff must present a prima facie case that creates an inference of employment discrimination. *Id.* If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant who may then articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* The plaintiff may then demonstrate that the defendant's reason is mere pretext. *Id.* at 803; *Manzer*, 29 F.3d at 1084. While *McDonnell Douglas* does shift the burden of production between the parties, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The general requirements that a plaintiff must show to meet her prima facie burden are that: "(1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated members of the unprotected class." *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 457 (6th Cir. 2004) (citations omitted). In addition, a plaintiff may alternatively satisfy the similarly situated prong "with evidence that a similarly-situated person outside the protected class received more favorable treatment." *Birch*, 392 F.3d at 165 (citing, *e.g.*, *Mitchell*, 964 F.2d at 582).

In the instant case, Defendant does not dispute that Plaintiff has established the first prong, that she is a member of a protected class, and the third prong, that Plaintiff suffered an adverse employment action.

-13-

*a. Failure to Promote*

When considering the plaintiff's qualifications for the second prong of the prima facie case, the Sixth Circuit has held that the court

> should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job. The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment . . . [specifically] the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.

*Wexler*, 317 F.3d at 575-576 (citations omitted). Additionally, the Sixth Circuit held that to establish that a plaintiff is qualified with regard to promotion or termination she must show that "she was performing 'at a level which [met] her employer's legitimate expectations.'" *Cline*, 206 F.3d at 658 (quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)).

At the outset, Plaintiff does not sufficiently identify when she applied for the process technician position, stating only that she believes she applied once in late 2002 and then four or five times in 2003 and 2004. As to the one promotion application that Defendant confirms (on April 28, 2004), Defendant argues that Plaintiff was not qualified for a promotion to process technician because she did not have the relevant experience and because she scored 48 percent on the mechanical aptitude test. Plaintiff does not put forth any evidence that she was qualified for the position or positions for which she purportedly applied.

Even assuming that she satisfies the qualification prong, however, she is unable to show that the position was given to a similarly situated employee outside of the protected class. Plaintiff lists four people who were promoted over her, only two of whom are men. Plaintiff does not provide last names for either man, nor does she identify to what positions these men were promoted, or when,

-14-

or what qualifications, experience, or tenure they possessed. Consequently, Plaintiff has failed to present sufficient evidence to demonstrate that a position for which she applied was given to a similarly situated person outside the protected class. Therefore, Plaintiff has not met her burden to make out a prima facie case, and summary judgment is hereby granted in favor of Defendant on Plaintiff's discrimination claim based on failure to promote.

### *b. Termination*

Defendant argues that Plaintiff was not qualified for the line technician position she held due to her excessive absenteeism and that, therefore, she fails to meet the second prong of the prima facie case. Defendant offers no arguments other than absenteeism with regard to the qualification element. However, case law shows that an employer's nondiscriminatory reason for a plaintiff's termination cannot be used to determine whether she was qualified at the prima facie stage. The Sixth Circuit has cautioned that

> a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

*Wexler v. White's Fine Furniture*, 317 F.3d 564, 574-75 (6th Cir. 2003) (citation omitted). In a racial discrimination decision analogous to the instant case, an Ohio district court held that "the reasons for termination cannot also be used to disprove Plaintiff's qualifications" where the employer offered the plaintiff's absences and work rule violations both as the reason for his termination and as evidence that he was unqualified for his position. *Thomas v. Ametech*, 464 F. Supp. 2d 688, 693 (N.D. Ohio 2006). In the instant case, Plaintiff was terminated for a work-related mistake after she had been issued a Final Warning regarding her multiple absences.

Consequently, Plaintiff's absences were one of the reasons for her termination, and therefore they should be considered during the pretext stage of the *McDonnell Douglas* analysis, not during the prima facie stage.

Furthermore, the cases Defendant cites do not support analyzing Plaintiff's qualification at the prima facie stage. In *Ketron*, the Sixth Circuit analyzed Plaintiff's absenteeism at the pretext stage of a retaliation claim, not the prima facie stage of a discrimination claim. Similarly, in *Little v. Highland's Hosp.*, No. 91-6378, 1992 U.S. App. LEXIS 34741, at *3 (6th Cir. Dec. 21, 1992), the Sixth Circuit found a well-established record of excessive absenteeism to be a legitimate reason for termination that did not single the plaintiff out for special treatment, but did not discuss whether the plaintiff was qualified nor whether she had met her prima facie case. Therefore, neither of these cases support Defendant's position.

Even assuming that Plaintiff can satisfy the qualification prong, however, she cannot prove that any similarly situated person outside the protected class was treated more favorably than she was. Plaintiff correctly states that she need only prove that she is similarly situated to non-protected employees in all *relevant* aspects. *Ercegovich*, 154 F.3d at 352. She contends that other non-protected employees who had similar or worse attendance records than her were not terminated for making work-related mistakes similar to the one for which she was terminated. (Pl.'s Opp'n at 10) ("Defendant fired her, a female line technician, but did not fire other male line technicians who had similar or worse absence records and/or who also mislabeled product . . . .".) However, Plaintiff nowhere identifies any individual who was not fired for making a work-related mistake under similar circumstances. She also does not provide information on any other employees' attendance records. The court finds that Plaintiff has presented nothing more than allegations to support her termination

-16-

claim and, consequently, she has failed to meet her burden to make out a prima facie case. Therefore, the court grants summary judgment in favor of Defendant on Plaintiff's discrimination claim predicated on termination.

### C. Retaliatory Termination, Public Policy Violations, and Intentional and/or Reckless Infliction of Emotional Distress

In its Motion for Summary Judgment, Defendant fails to address Plaintiff's claims of retaliatory termination, public policy violations, and intentional and/or reckless infliction of emotional distress. Consequently, the court finds that these claims are not properly before the court. As such, summary judgment is denied as to these claims.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike Defendant's Reply Brief (ECF No. 27) is denied, and Defendant's Motion for Summary Judgment (EFC No. 23) is granted as to Plaintiff's sex discrimination claims based on failure to promote and termination, and denied as to Plaintiff's retaliatory termination, public policy, and emotional distress claims.

The court will hold a final pretrial conference regarding the remaining claims in the within case on December 14, 2007, at 2:30 p.m. Trial shall commence on January 23, 2008, at 9:00 a.m. A separate trial order shall issue.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

December 5, 2007